1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF NEW YORK

3   JUNG KEUN KIM,                  .   Docket No.
                                    .   1:21-cv-01422-ENV-RER
4        Plaintiff,                 .
                                    .
5            v.                     .   Brooklyn, New York
                                    .   Tuesday, July 19, 2022
6   NEW YORK MEAT, INC., et         .
    al.                             .
7                                   .
         Defendants.                .
8    . . . . . . . . . . . .

9

10           TRANSCRIPT OF TELEPHONE CONFERENCE
         BEFORE THE HONORABLE RAMON E. REYES, JR.
11            UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiff:         Ryan Kim Law, P.C.
                               RYAN J. KIM, ESQ.
14                             222 Bruce Reynolds Boulevard
                               Suite 490
15                             Fort Lee, New Jersey 07024
                               718-573-1111
16
    For the Defendants, New    Law Offices of Jonathan Y. Sue,
17  York Meat, Inc. and Jong   PLLC
    Hwan No:                   JONATHAN Y. SUE, ESQ.
18                             303 Fifth Avenue
                               Suite 1207
19                             New York, New York 10016
                               212-967-1001
20
    For the Defendant, Picnic  Hur & Lash, LLP
21  World, Corp:               ROBERT L. LASH, ESQ.
                               SCOTT HUR, ESQ.
22                             600 Sylvan Avenue
                               Suite 109
23                             Englewood Cliffs, New Jersey
                               07632
24                             212-468-5591

25

1

Transcription Service:          Superior Reporting Services, LLC
2                               P.O. Box 5032
                                Maryville, TN 37802
3                               865-344-3150

4

Proceedings recorded by electronic sound recording;
5    transcript produced by transcription service.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

1              P R O C E E D I N G S

2           THE COURT:  Good afternoon.  This is Magistrate

3  Judge Reyes.  We're holding a telephone conference in the

4  case of Kim versus New York Meat, et al., docket number

5  21-cv-1422.  Counsel for the Plaintiff, please state your

6  name for the record.

7           MR. KIM:  Good afternoon, Your Honor.  Ryan Kim on

8  behalf of the Plaintiff.

9           THE COURT:  Counsel for New York Meat and Jong Hwan

10  No?

11          MR. SUE:  Yes, Jong Hwan No and New York Meat, Inc.

12  Good afternoon, Your Honor.  Jonathan Sue.

13          THE COURT:  And counsel for Picnic World?

14          MR. LASH:  Good afternoon, Your Honor.  This is

15  Robert Lash, and I have Scott Hur with me as well.

16          THE COURT:  Good afternoon, all.  So Mr. Kim, this

17  is your motion to compel, so why don't you take it away.

18          MR. KIM:  Yes, Your Honor.  There are a host of

19  issues dealing with the discovery in this matter, Your Honor,

20  so I filed letters to the Court.  So basically, we amended

21  the complaint to add Picnic World, and Mr. -- that was last

22  year.  Mr. Lash filed his appearance on December 10th of last

23  year so that's when the -- you know, he started participating

24  in the action.  And this year, January, the Court held

25  a -- you know, a status hearing and set the deadline for the

1    discovery until May 31st.  Party has been working on

2    discovery, and one of the main issues is that the most recent

3    court order stated that the -- the parties can -- so the

4    plaintiff was given time to depose but was limited to the

5    parties only.

6           And so based on that -- you know, Your Honor's

7    order, the Defendants are saying, you know, the managers or

8    the bookkeepers are not a party because the

9    corporation -- you know, only the officers or you know, the

10   directors are the parties.  So basically, although we asked

11   them to have them be available for depositions and that's

12   because the Plaintiff said that he -- you know, not only did

13   he have direct dealings with those people, those -- the

14   bookkeepers and the managers and -- the Picnic World

15   basically, they're flat out refuting that Plaintiff even ever

16   worked for them, was -- you know, was not even an employee.

17   And at the same time, they're not making any of these people

18   available for depositions.

19          So the Plaintiff, you know, testified that, hey, I

20   did -- you know, all these people called me constantly

21   to -- and then they asked me to go purchase things for the

22   restaurant.  You know, the Plaintiff provided me a list of

23   names.  I, you know, made it available to the Defendant's

24   counsel.  And so obviously, we need -- you know, we wanted to

25   depose them and say, hey, did you call Plaintiff and then ask

1   him to buy these things?  Or did you call Plaintiff and then

2   ask him to deliver these things?  These are, obviously, I

3   mean, basically -- I mean, necessary information that we need

4   to gain, especially in light of the fact that Picnic World is

5   flat-out denying that Plaintiff ever worked for the

6   restaurant.

7          And again, Defendant's position is that, look, the

8   Court said, it's parties only.  Parties limited to the

9   president, officers, and then directors, and you know,

10  clearly managers and bookkeepers are not those, so you know,

11  they're not part -- you know, they're not going to be

12  available for deposition.  So obviously, I don't think that

13  was the Court's intent to only limit to the officers.  And

14  here, these two corporations, Picnic World and New York Meat,

15  you know, it's not like AT&T or Coca-Cola where there's, you

16  know, tens of thousands of employees.  You know, they

17  themselves admit that they have less than 10 employees each.

18  You know, we're dealing with a single-digit employees, so

19  for -- you know, and --

20         THE COURT:  You want to depose the bookkeepers and

21  the managers for each of these corporations?

22         MR. KIM:  Yes, Your Honor.  And then, those people

23  that the Plaintiff identified as having contact with him, who

24  actually, you know, called them and you know, ordered to buy

25  things for the restaurant or ask him to deliver certain

1    things, so does that consist of the Plaintiff's work.

2         THE COURT:  How many depositions have you taken of

3    the parties so far?

4         MR. KIM:  Two, Your Honor, one each.  One from the

5    New York Meat and one from the Picnic World, so that's it.

6    And when I sent the deposition notices and I asked

7    them -- and I even said Your Honor so that hey, I understand

8    the employees are busy; I don't want to you know,

9    inconvenience them, so I am willing to travel to the

10   restaurant and there is a basement where the customers are

11   not there, so without the eyes of looking at any customers.

12   You know, I will bring the court reporter, interpreter, and

13   go to the basement, and then the employees can just come in,

14   you know, just briefly --

15        THE COURT:  Wait.  Bookkeepers and managers are

16   different than employees, all right.  We're talking about

17   bookkeepers and managers.  You provided a list to the

18   Defendants of all of the people you want to depose, correct?

19        MR. KIM:  Correct, Your Honor.  So I provided a

20   list of --

21        THE COURT:  How many people are on that list?

22        MR. KIM:  So on that list, Your Honor -- so -- one,

23   two, three, four, five -- seven, Your Honor.

24        THE COURT:  Seven between the two companies?

25        MR. KIM:  Seven from the Picnic World, Your Honor.

1              THE COURT:  So this is only with relation to Picnic

2    World, then.  It's not --

3              MR. KIM:  Actually, so with the New York Meat, Your

4    Honor -- so we have a different issue because they're

5    claiming --

6              THE COURT:  Okay.  Then, we'll talk about that

7    later.  I want to handle --

8              MR. KIM:  Yes, Your Honor.

9              THE COURT:  -- this issue by issue.  Seven --

10             MR. KIM:  Yes, Your Honor.

11             THE COURT:  -- people on your list to Picnic World

12   who the Plaintiff contends are either bookkeepers or managers

13   or --

14             MR. KIM:  Or employees that he had interaction

15   with, Your Honor.  So they know about the

16   employee -- Plaintiff worked for the Picnic World.

17             THE COURT:  Okay.  Mr. Lash, do you want to respond

18   to that?

19             MR. LASH:  Yes, Your Honor, a few things.  So

20   Picnic World, you know, never, you know, said that Mr. -- you

21   know, the Plaintiff, Mr. Kim, did not do any work for the

22   business.  He was, from our perspective at least, not an

23   employee.  He did occasional odd jobs.  There were occasions

24   where some people -- at the restaurant where he was sitting

25   there eating and would say he would go to -- he was going to

1   the supermarket, does the chef need anything?  And he would

2   go to the supermarket for himself and then supply something

3   to the restaurant if they wanted, things like that.

4          Or there were some times -- and there's been

5   testimony on this from Picnic World that there were times

6   that he -- they had a delivery to do and they -- he was there

7   and they said, you know, do you want to do this delivery;

8   we'll give you, whatever, 50 bucks or 100 bucks, or we'll

9   have our other delivery guy -- you know, we'll call a

10  delivery service to do it.  So they're not contending that he

11  didn't do any work.

12         The question is, you know, we don't believe he was

13  an employee.  But beyond that, the Plaintiff's testimony at

14  his deposition was that during no week did he ever work more

15  than 20 hours for Picnic World.  So whether he's an employee

16  or an independent contractor or however he's getting

17  classified, he did not even come close to the threshold for

18  being eligible for overtime wages.  But beyond that, if he

19  want -- you know, so our position was that he doesn't need to

20  depose every employee and every person that he's ever come

21  into contact with because there's no dispute that he did do

22  some work for the business.

23         There's a question central to this case of how many

24  hours.  And the Plaintiff himself testified it's not

25  even -- you know, it was a few days a week two or three times

1  a month, according to what he has put in writing, the

2  Plaintiff himself.  So with that we don't feel that -- to

3  burden seven different -- and I'll come to the seventh, but

4  seven different employees of the business.

5            In his interrogatory responses, we asked, who are

6  your supervisors at Picnic World?  Who do you claim were your

7  supervisors?  And we discussed this the last time we spoke

8  with Your Honor, and he identified three individuals, two of

9  whom are still alive, one of whom has passed away.  The two

10  of whom who were still alive, he's already completed their

11  depositions.  So for him to just say, did I work -- and you

12  know, they testified, you know, he did -- they did ask him to

13  do some things on occasion.  He did them.  He was paid.  Mr.

14  Kim, the Plaintiff, testified he did things on occasion.  He

15  thought he was paid, but he didn't get overtime wages for

16  working 20 or less hours.  And that's going to be -- you

17  know, I guess that's the issue in this case.  But for him --

18            THE COURT:  Mr. Kim, are you contending that Picnic

19  World and New York Meats constitute a single employer?

20            MR. KIM:  They're joint employers, Your Honor.  So

21  there's a lady called grandma, we call her grandma -- so

22  she's the one -- she started -- you know, she basically

23  oversaw both businesses.  And basically, Plaintiff, Mr. Kim,

24  did whatever the grandma asked him to do.  And so she was

25  usually at the restaurant, Picnic World, but she -- you know,

1    but whenever she called, you know, Plaintiff, hey, go do this

2    and go do that, so they -- and because -- you know, the

3    grandma was effectively owner of the Picnic World until she

4    passed it down to, I guess, her granddaughter.  You know, so

5    it was effectively New York Meat and Picnic World, and they

6    were, you know, joint employers, you know, sharing the

7    employment of Plaintiff.  That's why it's improper to just

8    say Count One, you know, took five hours or six hours.

9              I mean, first of all, Plaintiff never said he did,

10   you know, sporadic work.  You know, constantly on weekends,

11   he's always worked for the Picnic World.  And you know, even

12   during the week, he worked for the Picnic World and New York

13   Meat.  So when combined together, you know, he worked much

14   more than, like, you know, 78 hours per week.  So you know,

15   Mr. Lash -- you know -- and then, what he stated it's

16   not -- you know, I mean, it's only the Defendants' claim.

17   That's why it's important to talk to other employees who work

18   at the restaurant and say, hey, did they -- was it really

19   true that he actually sporadically every now and then when he

20   happens to be eating at the restaurant they ask him to

21   deliver or was -- you know, did you guys constantly call him

22   and ask him as -- you know, treated him as if he's a regular

23   employee.

24             That's why we need to do the deposition.  We don't

25   need to hear from the owners because I know what they're

1   going to say.  Of course, they're going to say, oh, he wasn't

2   an employee.

3           MR. LASH:  Well, but he's also wanting to depose

4   the owner.  And he wants to depose -- he asked for a

5   30 -- the seventh witness that he's talking about is a

6   30(b)(6) witness, who -- what he's looking for -- and this

7   goes back to what I think, you know, part of our objection

8   with him deposing all of our employees in addition to the

9   inconvenience and the disruption to the business is, you

10  know, he's looking to depose everybody about everyone else

11  who has ever worked at the business, and that's what his

12  30(b)(6) notice is about.

13          THE COURT:  Sure.

14          MR. SUE:  I mean, he says -- I mean, in his

15  30(b)(6) notice, he wants a witness -- let me pull it up.  He

16  wants a witness with knowledge of all pay stubs, all W-2

17  forms, all expense reimbursements, all commissions, all

18  bonuses, all tips, and any other documents or evidence

19  relating to the payment of money or benefits for any reason

20  from Picnic World to any of Picnic World's employees for six

21  years.

22          MR. KIM:  So Your Honor, again, Picnic World is a

23  small restaurant.  They have, you know -- my understanding

24  is -- less than 10 people -- employees.

25          MR. LASH:  You're incorrect about that.

1          MR. KIM:  And they're making it, you know, as if

2    it's, like, a shoe, you know, conglomerate that, you know,

3    numerous employees that, you know, it's not possible to --

4          MR. LASH:  But this case also is not about -- Your

5    Honor, it's not about --

6          THE COURT:  Mr. Lash, you cut him off.

7          MR. LASH:  It's about Mr. Kim.

8          THE COURT:  Look, you can have these depositions of

9    these employees and the bookkeeper and the managers at their

10   location.  It will only be about Mr. Kim, and you will make

11   it -- if the issue is how many hours did he work for Picnic

12   World and they can have -- and they may have testimony

13   relevant to that, he's entitled to pursue it.  But he's not

14   entitled to question these people or any witness about other

15   employees, what they were paid, how many hours they worked,

16   because this is not a collective action.

17         MR. KIM:  Understood, Your Honor.

18         THE COURT:  Until Judge Komitee -- it is Judge

19   Komitee, right?

20         MR. LASH:  No.  I think it's -- I'm sorry.

21         THE COURT:  It's Vitaliano.  Sorry.

22         MR. LASH:  Yes.

23         THE COURT:  Until he reverses my decision on the

24   conditional certification motion, discovery on other

25   employees is off the table.  I think these employees and the

1  bookkeeper may have relevant testimony concerning Mr. Kim's

2  hours worked, frequency, what have you, and he's entitled to

3  inquire about that.  I would envision that these would be

4  very short depositions.

5          MR. LASH:  How about the owner of the business?  He

6  said he didn't want that, but he noticed her deposition.

7  He's noticed the people -- he's deposed the people they said

8  were managers.  He hasn't claimed that she's had -- that he's

9  had contact with her or she would know anything about his

10  work.

11          THE COURT:  What is it that you want to ask the

12  owner, Mr. Kim?

13          MR. KIM:  Okay.  So Picnic World, so there's this

14  lady, Jong Hwan No, she's the daughter of the grandma, so

15  she's was effectively running the place, especially

16  after -- and then I believe she still does.  But she claims

17  that, oh -- and my understanding -- so we've had the

18  deposition of her.  My understanding was that she was going

19  to be the 30(b)(6) witness.  But then on the day of the

20  deposition, she said, no, I'm not a -- I'm not the Rule

21  30(b)(6) witness.  So then --

22          THE COURT:  When did she become the owner?

23          MR. KIM:  So she was never officially on the record

24  of owner, but basically, Judge, under the grandma -- because

25  she was the daughter, she was, you know, running things, you

1    know, as if she was the owner.  And then when the grandma

2    passed away, I mean, she's still -- my understanding is she

3    still does the same role --

4               MR. LASH:  Can I point out, Your Honor, that --

5               MR. KIM:  Officially --

6               THE COURT:  Mr. Lash, let Mr. Kim finish.

7               MR. KIM:  -- the ownership of the restaurant passed

8    from the grandma to the granddaughter, and so when the

9    daughter came and said that oh, I'm not the 30(b)(6) and we

10   were -- you know, and then the owner is my daughter,

11   basically.  So then, we said, okay, then, we need to depose

12   her and see what she knows.

13              THE COURT:  Did the owner, who is the granddaughter

14   of grandma, yes?

15              MR. KIM:  Yes.  That's right, Judge.

16              THE COURT:  Did she have any interaction with the

17   Plaintiff?

18              MR. KIM:  So whenever Plaintiff was at the

19   restaurant, he saw her there.

20              THE COURT:  Other than seeing her there, did he

21   have any interaction with her?  Is he contending that she was

22   directing his work, telling him when and where to make

23   deliveries, things like that?

24              MR. KIM:  Not that granddaughter, Your Honor, but

25   the daughter, yes.

```
 1                THE COURT:  But the granddaughter is the owner?

 2                MR. KIM:  On the record, yes.

 3                THE COURT:  And so you assume that she would be the

 4    30(b)(6) witness, but she's not?

 5                MR. KIM:  Actually, I thought the daughter would be

 6    the 30(b)(6), and that's what they actually, you know, told

 7    me.  But on the day of deposition, she said that she's not

 8    the 30(b)(6) witness, and so they --

 9                THE COURT:  So they have not --

10                MR. KIM:  -- have not designated.

11                THE COURT:  Is there going to be a 30(b)(6)

12    witness, Mr. Lash?

13                MR. LASH:  Your Honor, the issue with the 30(b)(6)

14    witness and we've offered to produce a 30(b)(6) witness and

15    why the daughter we could not put up was the scope of the

16    30(b)(6) notice that he served was so broad and had to do

17    with all the other employees that worked there as well as

18    every single delivery that this business has made since 2014,

19    whether Plaintiff did it or not, he wanted the names of every

20    customer of the business, every delivery address -- I'm

21    reading from his notice -- the list of every single party

22    that Picnic World catered to between the years of 2014, which

23    goes back more than six years from when filed this to 2020.

24                So every single delivery that this restaurant has

25    ever done regardless of whether Plaintiff was involved in it
```

1   in any way, he wanted that as well as knowledge of every

2   single employee and their hours and their pay and their

3   everything and every single employee who's been hired and

4   fired and what hours they worked and how they were scheduled

5   for a six- or seven-year period.  And so he asked that to be

6   our 30(b)(6) witness, and we said, no, we can't do that.  And

7   I asked him -- we had a phone conference about this, and I

8   asked him to consider narrowing this to focus on what the

9   Plaintiff did.  And he said he would consider that and then

10  he never called me back and instead just made the motion to

11  compel.

12          THE COURT:  I think you should consider that, Mr.

13  Kim.

14          MR. KIM:  Judge, frankly, I actually attached our

15  30(b)(6) notice as a part of the motion because I didn't want

16  to, you know, have he-said, she-said.  It's there.  And I

17  mean, Judge, the problem is, again, this is a small

18  restaurant with less than 10 employees and it's not -- you

19  know, Mr. Lash is making as if, oh, well, you know, like,

20  I -- you know, the Plaintiff is asking, you know, anything

21  and everything on Earth.  And that's not the case, Judge.

22  It's a small restaurant.  And I mean, frankly, the owner

23  knows, you know, and they're just trying to play this game.

24          Owner is the one who knows, but they don't want to

25  have the owner available, so that's why they're making this

1  nonsense, you know, objection saying, are you saying, you

2  know, like, every single employee, every transaction, every

3  delivery and on and on and on, when there is -- in fact, the

4  owner, who really, she's the one who knows -- she's the one

5  who directed the Plaintiff.  She knows, you know, in detail,

6  the daughter, but because the daughter -- whatever the reason

7  why they're -- they don't want the daughter to be the witness

8  and then that's why they're just claiming all these, you

9  know, objections.  Again, Judge, it's a small operation.  The

10  owner knows everything.  Owner is the one.  So we would

11  rather have the owner come and testify as a 30(b)(6).

12          THE COURT:  Did you ask the owner any of these

13  questions that you have on your 30(b)(6) notice that I'm now

14  looking at?

15          MR. KIM:  So when she --

16          THE COURT:  Not the owner but the daughter.  Did

17  you ask the daughter?

18          MR. KIM:  Yes, Judge.  So when the daughter

19  was -- during the daughter's deposition, basically she said,

20  oh, I don't remember, I don't remember, and I don't know, I

21  don't remember.  So she just continued -- you know, continued

22  that line of, you know, answering.  So obviously, 30(b)(6)

23  witness, she -- you know, the witness cannot say I don't know

24  or I don't remember.  And I think that's why they don't want

25  to have her as a 30(b)(6) because she's the one.  I mean, I'm

1    telling you, Judge.  She ran the business.  She's the

2    daughter of the grandma.  Effectively, she's the owner.  And

3    only on paper, the granddaughter, which is the, you

4    know -- is on paper.  So we would rather have her, the

5    daughter, be the 30(b)(6) because she's really the one who

6    knows.

7              THE COURT:  You can't dictate who this person --

8              MR. KIM:  That's right, Judge.  I mean, I'm

9    just -- yeah.  You are right, Judge.  But they're just

10   playing this game.

11             THE COURT:  And you will get a 30(b)(6) witness.

12   It's going to be limited, though, to your client and their

13   practices with respect to your client.  Again, this is not a

14   way of getting -- of changing this into a collective

15   because --

16             MR. KIM:  Understood, Judge.

17             THE COURT:  So produce a 30(b)(6) witness,

18   negotiate a more limited list of topics for the 30(b)(6), so

19   that person can be prepared and get it done.

20             MR. KIM:  Yes, Your Honor.

21             THE COURT:  All right.  Next issue?

22             MR. KIM:  The next issue, Judge, is the -- with

23   respect to New York Meat.  So they're claiming that the

24   Plaintiff was a manager, therefore, he was an exempt employee

25   from overtime.  And again, we're, you know -- so -- but

1  they're not making any of the employees available for

2  deposition.  So obviously, it's important to, you know,

3  depose these employees who worked with the Plaintiff and find

4  out, you know, whether Mr. -- you know, Plaintiff was

5  actually spending, you know, all his time on, you know,

6  managing or actually he was, you know, delivering product

7  just like the other drivers.  And you know, the Defendants'

8  counsel, Mr. Sue, doesn't want -- obviously, doesn't want it,

9  so that's at issue, Judge.  So again, we need to depose the

10  employees briefly.

11       And I also offered to travel to the employer's, you

12  know, jobsite and -- I mean, there are no customers there so

13  there's no issue.  So I said, hey, I will travel with a court

14  reporter.  I will bring an interpreter and you know, let's

15  have a quick, you know, maybe, you know -- it's not going to

16  last long, so I will try to -- you know, minimal interruption

17  of the, you know, work.  But you know, again, they're -- you

18  know, they're jumping up and down and not making the

19  employees available.

20       THE COURT:  How many employees are there during

21  this period that the Plaintiff worked for New York Meat?

22       MR. KIM:  So my understanding is about six, Your

23  Honor.

24       THE COURT:  And are they still employees?

25       MR. KIM:  Several of them are but not all of them,

1    Judge.

2              THE COURT:  Mr. Sue?

3              MR. SUE:  Your Honor, most of these names of the

4    employees that were our -- on our witness list, so to speak,

5    they were given to Plaintiff's counsel back in -- back

6    starting in August of 2021.  These are not new names.  Now,

7    it appears that after I obtained declarations from these

8    employees in opposition to Plaintiff's class cert motion that

9    Plaintiff had issues with this.  And after that, they wanted

10   to depose these individuals for what appeared to be sole

11   purpose of asking about the circumstances surrounding their

12   declarations, not about their employment, not about the

13   Plaintiff's employer status.

14             It's always been my position and -- that the

15   Plaintiff was a manager.  All the present employees have

16   signed declarations saying that he was the manager.  The new

17   manager that took Plaintiff's position, he declared what his

18   job duties are and that he was the manager and what his

19   duties are, so there's nothing new here, Your Honor.  He just

20   wants to prolong this litigation for some reason.  And these

21   are not surprise witnesses.  And like I said, we're going

22   back to August of 2021 when -- at least -- actually before

23   that when Plaintiff knew about all these employees and what

24   they were going to say during their -- during trial, so to

25   speak.

1          Okay.  Now, the class cert motion, there's an

2     appeal obviously, but I mean, as of right now, they've been

3     decided and they're -- the issue of whether these employees

4     signed these declarations and under what circumstances has

5     nothing to do with the case.  And I reminded Plaintiff's

6     counsel, you know what?  You're going to be able to

7     obviously, owe these -- has been contested, and that's what

8     the trial is for.  You're going to have an opportunity to

9     cross-examine these witnesses.  The declarations don't have

10    any bearing on trial, obviously, because their witnesses have

11    to appear and testify.  So there's no point in dragging these

12    employees and asking, oh, was he the manager.  They already

13    said he was the manager.  There's no issue there.  It just

14    happens to be contest obviously.

15         THE COURT:  If New York Meat intends to use these

16    people as witness should we get to a trial, he's entitled to

17    depose them.

18         MR. SUE:  Well, they were --

19         THE COURT:  You can't shield someone from a

20    deposition by saying, hey, they have relevant knowledge on

21    the employment relationship, what role the Plaintiff played.

22    Here's a declaration that says he's a manager.

23         MR. SUE:  Right.

24         THE COURT:  So that means he's exempt, so

25    therefore, he doesn't get overtime and because I submitted a

1    declaration, I can't be deposed.  That's what I heard you

2    say.

3            MR. SUE:  Well --

4            THE COURT:  He can cross-examine them at trial.

5            MR. SUE:  Right.  And as I said before, Your Honor,

6    these names were provided to Plaintiff counsel last year.

7    It's not as if they were just noticed for the first time when

8    they submitted declarations to oppose the motion.  These are

9    not new names.  These are not new employees.  These are

10   someone that Plaintiff has known for over 5, 6, 10, 20 years.

11   So if he did want to depose them, why do it after the

12   discovery deadline is passed or soon approaching?  I mean,

13   obviously, there are different types of witnesses that

14   Plaintiff might want to, I guess, depose or subpoena.  I

15   mean, there's no end to this.  And there's no surprise.

16           THE COURT:  I mean, you have to admit, Mr. Kim,

17   it's a little bit late, don't you think?

18           MR. KIM:  Judge, if I may?  Actually, Defendant

19   filed this declaration from the employees on April 14th.  And

20   in that declaration, in that April 14 -- this year, you know,

21   from one of the employee's declaration says, I have the same

22   responsibility of the previous manager, Mr. Kim, and you

23   know -- and then, my job includes, you know, maintain

24   schedule, blah, blah, blah.  And so obviously, this is

25   something new.  They have never submitted this.  And this was

1   just April.  And so we obviously need to depose this employee

2   and say, hey -- and frankly, Judge, my understanding is that

3   none of these employees actually read, even understood these

4   declarations.

5           I don't believe they knew what they were signing.

6   And employer just -- when they just hey, you need to sign it;

7   can you sign it, they just signed it without really knowing.

8   Because that's what happened to the other employees, former

9   employees, who the employer approached and hey, can you just

10  sign this for me?  And then, they, you know, interpreted it

11  incorrectly, and so they didn't know what they were signing

12  and they got, you know -- so that's what they testified.  So

13  these are not -- you know, old the information, Judge, they

14  submitted in April.

15          And it talks about the Plaintiff's case that's

16  saying, hey, you know, he was the manager; I have the same

17  responsibility, then, okay.  So Mr. X, did you understand

18  when you signed it?  You know, did your employer explain this

19  to you in your language?  And if you see those declarations,

20  judge, they're identical.  The language is identical.  I

21  believe these were prepared by Mr. Sue and Mr. Lash and you

22  know, presented to the employees without really, you know,

23  explaining what they were signing, and they just signed it

24  because they -- you know, well, the employers are asking me

25  to sign something.  I mean, employees, you know, they have

1    very few options.  I mean, what are you going to do, say no

2    I'm not going to sign it?

3              MR. SUE:  Your Honor, the declarations were

4    obtained in good faith, and if counsel is suggesting that any

5    declaration submitted to Court would require some time of

6    evidentiary hearing as to the background and the execution of

7    the declaration, I think that's well beyond what this Court

8    should be doing.  It's ridiculous.  The information was

9    provided to counsel, we prepared the declarations pursuant to

10   it, and they were signed.  And Plaintiff signed declarations

11   also.  And like I said, he's mentioning declarations from

12   April regarding the class third motion, these names of the

13   employees, with possibly the exception of the new manager

14   were, like I said, provided back in August of last year.

15             THE COURT:  How were they provided, in what way?

16   In what way did you provide the names?

17             MR. SUE:  At least Rule 26 -- I have it in front of

18   me, and also, I'm sure they were provided in the paper

19   discovery interrogatories.  And this goes back to August.

20             THE COURT:  All right.  You can depose the New York

21   Meat employees.  I think there are six of them, you said.

22             MR. KIM:  Yes, Your Honor.

23             THE COURT:  It's about the Plaintiff not about

24   their hours and how much overtime or anything like that

25   because it's not a conditionally certified collective.

1                  MR. KIM:  Yes, Your Honor.  Understood.

2                  THE COURT:  You can inquire about the specifics of

3    them signing those declarations.

4                  MR. KIM:  Yes, Your Honor.

5                  THE COURT:  And short depositions, focused

6    depositions.

7                  MR. KIM:  Understood, Your Honor.

8                  THE COURT:  What's the next issue, Mr. Kim?

9                  MR. KIM:  Your Honor, so they also objected to me

10   being on their -- the employer's site.  And I offered them

11   as -- so that it's -- as more of a convenience for the

12   employees and for the employer to -- you know, so that they

13   don't have to travel, and instead, I can travel to where they

14   are, so --

15                 THE COURT:  Well, I thought they objected to you

16   doing a site inspection.

17                 MR. KIM:  The site inspection was about the

18   posters, you know, the under -- pursuant to the, you know,

19   FSA and New York labor law whether they are having those

20   posters posted.  But I also offered them to just do the

21   deposition at their site to, you know, reduce the

22   interruption.

23                 MR. LASH:  Your Honor, this is Robert Lash.  I

24   mean, what posters they may or may -- businesses may or may

25   not have in July of 2022 would have no bearing on -- first of

1    all, I don't even think that they made a claim about that,

2    but if he did in his complaint, what they had posted, Mr. Kim

3    testified that his last work that he did, I think, at Picnic

4    World was around September of 2020.  For New York Meat, he

5    said, I think, December of 2020.  So we're a year and a half,

6    two years later.  You know, what they have posted today is

7    not going to be in any way admissible or relevant or within

8    the scope of discovery as to what they had, you know, two

9    years ago.

10          THE COURT:  I agree.  No site inspection.  But what

11   is the problem with having the depositions done at

12   the -- each of the locations?

13          MR. SUE:  This is Jonathan Sue, Your Honor.  Our

14   location is in Bronx Terminal Market.  There some admissions

15   issues, but it's very disruptive and it's distracting for the

16   employees to have a unknown person there and having to, like,

17   work around their schedule and things like -- of that nature.

18   It's very invasive, Your Honor.  If anything, I mean, we'll

19   produce a group of employees at a time at a place -- at a

20   location -- at a place to be agreed.  But to, I guess,

21   intrude upon my client's work place and -- I mean, I don't

22   even know what the layout is.  I mean, we have meat going in

23   and out all day and we have the driver's with their schedules

24   and we have deliveries going in and out, so I don't think

25   it's very conducive to a -- something formal like a

1  deposition, Your Honor.

2         MR. LASH:  Your Honor, this is Robert Lash.  We

3  have a similar issue.  I mean, Mr. Kim, Plaintiff's counsel

4  has talked about, you know -- I don't think he's ever been in

5  the basement of a restaurant.  It's a very, you know, small,

6  cramped space.  There really isn't a good place there to do a

7  deposition and to have, you know, multiple people sitting

8  around a table, you know.  But we can work out with

9  him -- you know, the Court's ordered certain depositions.

10  We'll work out a place that's convenient.

11         I mean, you know, Mr. Kim says he wants to do this

12  for the convenience of the employees.  We appreciate that.

13  So let us work out with him a place that's convenient for the

14  employees.  But requiring us to do in a cramped space that's

15  going to interfere with the business and probably

16  doesn't -- isn't big enough to do this I don't think makes

17  sense since it's -- the space just isn't, you know, there for

18  this.  It's not set up and conducive to it.

19         THE COURT:  Okay.

20         MR. LASH:  But there are many places that we could

21  mutually agree upon.

22         THE COURT:  Mr. Kim, you don't particularly care,

23  do you?

24         MR. KIM:  I don't, Judge.  I was offering

25  because -- more for the convenience of the employer and the

1  employee so that, you know, there's a minimal interruption.

2  Frankly, the excuses they provided doesn't really make sense,

3  but if they don't want to do I there, I'm not going to insist

4  upon it being there, Judge.

5         THE COURT:  Okay.  You determine the location, but

6  get those depositions done.

7         MR. KIM:  Yes, Your Honor.

8         THE COURT:  And no site inspection, again.  What's

9  the next issue, please?

10        MR. KIM:  The next issue, Judge, Your Honor, is

11  the -- so the Picnic World.  When we issued the discovery

12  request, document production request, they did not provide a

13  single document, and then they said -- basically, they said

14  no relevant -- no responsive documents.  And then, when we

15  had a deposition of the daughter of the restaurant,

16  she -- you know, so Plaintiff could have testified that he

17  had numerous text messages, you know, between himself and

18  then the daughter.  And the content was about, you know, all

19  the work, what they're being -- the daughter directing him,

20  you know, where to go, what to do.  And so when I asked, you

21  know, the daughter, strangely, the communication

22  with -- between Plaintiff and the daughter only that was not

23  there, was missing.

24        There is an app called KakaoTalk that the Plaintiff

25  said that he used to communicate with the daughter but

1    strangely said she replaced the phone -- you know, so she got

2    a new phone.  But then all the other chats with other people

3    still has -- you know, is there on that new phone but not the

4    chat with the Plaintiff.  So they certified that, you know,

5    no relevant documents exist and then it's -- and they didn't

6    produce any and you know.  So then, I want to have those

7    phones be available for forensic examination and see if there

8    was any messages, you know, deleted.  If so when was it

9    deleted; was it after the filing the lawsuit, you know, and

10   what was deleted?

11         So New York Meat's owner, Mr. No -- so basically,

12   Judge, my understanding is that he's the one who is basically

13   defending the -- both corporations, on behalf of both Picnic

14   World and New York Meat because the daughter, she's not

15   really -- she's relatively new to this country, so she

16   doesn't really know much versus Mr. No has been in the U.S.

17   for a long period of time, I believe over 30 years.  So he's

18   actually directing the defense of both corporations.  And

19   then only when it's convenient for him, he says, oh, you

20   know, I have nothing to do with Picnic World; Picnic World's

21   a different entity so -- and --

22         THE COURT:  All right.  Let's just hold on just one

23   second.  So Jong Hwan No is the daughter?

24         MR. HUR:  Your Honor, this is Scott --

25         THE COURT:  Left me sift through this.  I know

1    we've been through this, but I need to --

2              MR. HUR:  Sure.

3              THE COURT:  I want to go through it again.

4              MR. HUR:  It's Jong Hwan No, is the daughter.

5              THE COURT:  And Jong Hwan No is the grandmother?

6              MR. KIM:  Yes, Judge.  Correct.

7              THE COURT:  And the granddaughter is not named?

8              MR. LASH:  Correct.

9              MR. KIM:  Correct, Judge.

10             THE COURT:  And Mr. No is Yun Hwa No's husband?

11             MR. KIM:  No.  It's son.

12             THE COURT:  Son.  Oh, I see.  So it's son, who is

13   directing, according to Mr. Kim, the litigation.  It's the

14   daughter who has already been deposed and who had this cell

15   phone with this chat app on it that now has no chats with the

16   Plaintiff but chats with other people during that time.

17             MR. HUR:  Your Honor, this is Scott Hur for Picnic

18   World, and I defended the deposition for Ms. Jong Hwan No,

19   and I'm really -- you know, this is really upsetting me

20   because Mr. Kim's purposely misrepresenting to the Court that

21   Ms. No has deleted.  She denied.  Specifically, Mr. Kim asked

22   did she delete it.  She said no.  She said no on the record.

23   Okay.  And second thing is, the phone was -- she dropped it.

24   It was broken.  He specifically asked her now -- Mr. Kim

25   says, oh, strangely enough.  He asked, why did you change the

 1   phone?  And she replied, she responded, I dropped the phone;

 2   it broke, so I replaced it.  So I don't know why he

 3   thinks -- Mr. Kim conveniently thinks that she deleted.  She

 4   testified she did not delete it.

 5           THE COURT:  So answer the question, though,

 6   Counselor.

 7           MR. LASH:  -- please, Your Honor, which is

 8   that -- well, two things.  When Mr. Kim put this in his, you

 9   know, letter, I was surprised to see it because when we had

10   our meet and confer, this was not something that he had

11   raised.  But put that aside for a moment.  What he's saying

12   now is that his client has text messages that he did

13   with -- you know, he's saying with Picnic World that he is

14   refusing to produce.  He has not produced and he is refusing

15   to produce what he wants --

16           MR. KIM:  That's not true.

17           THE COURT:  Okay.

18           MR. LASH:  -- possession of Ms. No's phone so

19   that -- to see what happened to her messages, even though

20   these same messages, if they existed, would be on Plaintiff's

21   own phone, but he has not produced any, not one that he says

22   exists.

23           THE COURT:  Let me go back to my original question.

24   She had a phone with this chat app on it.  The phone broke.

25   She got a new phone, put the same chat app on it, and then

1   produced chats during the relevant period with other people

2   but not with Plaintiff?

3           MR. HUR:  No, Your Honor.  That's what Mr. Kim is

4   saying, but I don't know where he got this information.  She

5   surely didn't testify.  Mr. Kim asked her, and she said she

6   did not delete it.  So I don't know where he's getting this

7   information.

8           MR. LASH:  And there were no other chats there --

9           MR. HUR:  Exactly.

10          MR. LASH:  -- with anyone else --

11          MR. HUR:  Right.

12          MR. LASH:  -- either.

13          THE COURT:  Did she produce any chat with anyone?

14          MR. LASH:  No.

15          MR. HUR:  And Your Honor, just to be --

16          MR. KIM:  Your Honor?

17          MR. HUR:  I'm sorry.

18          MR. KIM:  Your Honor?

19          MR. HUR:  If I may?  Your Honor, just to let you

20  know, I recently changed my phone from Android app, and I

21  know the app that Mr. Kim's referring to, KakaoTalk.  I'm

22  just letting you know, when I updated it -- updated.  When I

23  changed the phone, none of my messages for everyone that I

24  was chatting with came up, not because I deleted but because

25  I changed the phone.  And when I installed it, it was blank.

1    I'm just letting you know, Your Honor.

2              MR. LASH:  But if Plaintiff hasn't changed his

3    phone, then he presumably would have all these texts that

4    he's saying exist, but he refuses to produce.

5              THE COURT:  Is that correct, Mr. Kim?

6              MR. KIM:  No, Your Honor.  So I can tell you -- I

7    can tell the Court, Judge -- so unfortunately, Mr. Kim

8    doesn't have any of those chats.  If they were in existence,

9    we would love to produce it already, but unfortunately, he

10   doesn't have it.  And during the deposition, I asked Ms. No

11   to show and she showed it on -- during the deposition, Judge,

12   that how -- you know, she explained that she got the new

13   phone but she's not technically, you know, proficient, so she

14   had her kids, meaning her daughter or the son-in-law, do it

15   for her.  And so I asked do you have any chat messages with

16   the Plaintiff, and she said no.  And then I asked her, do you

17   have chat messages with any other people, and she held her

18   phone and showed it during the deposition and said, yes, I

19   do.  That's why I said, then, how come you have chat

20   messages --

21             MR. HUR:  Yes, new messages, Your Honor, new

22   messages, Your Honor.

23             THE COURT:  Mr. Kim, did you see what period those

24   messages covered, if it was during the period that she was

25   supposedly having these messages with your client or

1    subsequent to that?

2              MR. KIM:  So I cannot tell, Judge, whether

3    it's -- what period of time --

4              THE COURT:  Okay.

5              MR. KIM:  -- because it was during the deposition

6    and she just held her phone and showed.

7              THE COURT:  You haven't made a sufficient showing

8    that she got rid of any messages.  Your client is

9    saying -- well, the only evidence you have is your client is

10   saying, I texted her with Cow Chat [sic] or whatever it is

11   and her saying, I broke the phone, I got a new one, and I put

12   this message on there -- this app on there, and now I have

13   chats with other people subsequent to the period of time when

14   she was having these chats with your client.  That's not

15   enough to say she deliberately -- or to even get close to

16   saying that she deliberately deleted those messages.  And

17   it's really a -- it's quite a stretch.  Does she dispute that

18   she had chats with your client?

19             MR. HUR:  She testified she doesn't recall.  But

20   that being said, I don't know whether -- well, my

21   recollection is that she did not remember.

22             THE COURT:  All right.  I don't see enough, Mr.

23   Kim, to compel her to have a forensic image done of her phone

24   and then for you to go through it.

25             MR. KIM:  Understood, Your Honor.  So we had the

1  same issue with the New York Meat owner, Mr. No.  So it

2  appears that he didn't really search his cell phone to

3  produce documents, and I don't know if his attorney even

4  asked him to produce them, but certainly, nothing was

5  produced.  But during the deposition of Mr. No, he had

6  messages on his phone, so we would like -- we certainly would

7  like him to produce those.

8          MR. SUE:  This is Jonathan Sue, Your Honor.  We're

9  not contesting that Plaintiff worked for us.  He did work for

10  our company for over 28 years.  I don't see the relevance of

11  what type of text messages that there may have been back and

12  forth.  I mean, he worked for us.  My client communicated

13  with him via cell phone, via text messages and whatsoever.  I

14  mean, what --

15          MR. KIM:  No.  But Mr. No also -- at the same time

16  also said that Mr. Kim was done with work 1 p.m. -- usually 1

17  p.m. or sometimes even earlier.  And those messages

18  originated from -- during the weekend and you know, much

19  later than 1 p.m.  And so again, those will contradict

20  whatever testimony and will show that, you know, the

21  testimony of Mr. No is not to be trusted.

22          MR. SUE:  There was never any allegations that he

23  did work for New York Meat on the weekends or late at night.

24  I mean, our business is a wholesale meat business.  It

25  doesn't operate that way.  And even if there were text

1    messages, it's not as if Plaintiff could've acted on it at

2    1:00 in the morning when he received a note from the owner

3    saying, oh, make sure you, you know, purchase 200 pounds of

4    XYZ meat next week or something.

5            MR. KIM:  So actually, those messages also from Mr.

6    No was regarding Picnic World's work that you know, hey,

7    bring -- make sure you bring this, you know, company vehicle,

8    van or the truck for the Picnic World's related delivery.  So

9    that will also shed light on whether, you know, those two

10   corporations are joint employer or not.

11           MR. LASH:  Your Honor, this is Robert Lash.  Can I

12   just say -- reiterate again?  These are all messages that,

13   you know, Mr. Kim, the attorney is speculating about that his

14   client had.  He said his client doesn't have these anymore,

15   even though they were on his client's own phone, and he

16   hasn't provided any explanation for why his own client, the

17   Plaintiff, doesn't have these.  He's trying to gloss over

18   that and just say, you know, forget about why I don't have

19   messages on my own phone; let's just talk about why you

20   don't.

21           MR. KIM:  No.  No.  Judge, so Mr. Kim -- well, this

22   is evidence that would help our case, so there's no reason

23   why if we did have them we wouldn't produce them.  We don't

24   have them.  And then Mr. No during his deposition had those

25   messages, but he did not produce them.  That's why we're

1   asking, hey, you didn't produce them, produce them.

2        MR. SUE:  Plaintiff did produce them, Your Honor.

3   I mean, I have it in the discovery response.  It's JKKim0001

4   through -- a lot of it's in Korean, but they appear to be

5   text messages and screenshots of text messages.  So that's

6   about over 200-something pages of text messages and mostly in

7   Korean, Your Honor, so I don't know why he's saying he didn't

8   produce them.  He has them.  And he gave it to -- this was

9   back in February when they produced them, Your Honor.

10        THE COURT:  Mr. Kim, how can you say you didn't

11   produce them, when Mr. Sue has got them on his computer?

12        MR. KIM:  Judge, so what he is referring to is a

13   different one.  I'm talking about the -- again, the chat app

14   called KakaoTalk.  He never produced the KakaoTalk messages.

15        THE COURT:  If your client has text messages with

16   Mr. No, how does he not have the KakaoTalk messages with Mr.

17   No?

18        MR. KIM:  So the same issue, Judge.  The Plaintiff

19   replaced the phone and then with the new phone -- on his new

20   phone, those messages are not there.  I mean, we would love

21   to produce them, if it was there.  I mean, obviously, there's

22   no reason -- it would only, you know, support our

23   allegations, but unfortunately, we -- yeah, there was none.

24   But we did see it on Mr. No's phone during the deposition.

25        MR. SUE:  This is Jonathan Sue, Your Honor.  We do

1   have what appear to be text messages from January 2017 on.

2   And like I said, they all seem to be in Korean, so I cannot

3   exactly say -- tell what they say, but they go up to 2020.

4   And I don't think it's only with my client.  I think it's

5   with possibly the vendors also from what I can tell.  And as

6   stated before, we're not denying that there were

7   communications between an employer and the -- and his manager

8   for the past 20-something years that he's worked there.  I

9   mean, I don't see the relevance of producing a client's very

10  personal cell phone and digging into all the private

11  information he has in there, when Plaintiff had that

12  information on his own.

13          THE COURT:  Well, he doesn't have all of it,

14  apparently.  That's what he's saying.

15          MR. SUE:  Well, I have 200-something pages of it.

16  I --

17          THE COURT:  And are those text messages, or is that

18  KakaoTalk?

19          MR. SUE:  I couldn't tell, Judge.  I mean, some of

20  them are in color.  Some of them are just plain

21  black-and-white text.  Some of them appear to be screenshots.

22  There's actually photographs in some of them with bone marrow

23  and different types of meat.

24          THE COURT:  Do you know how much a forensic exam of

25  a cell phone costs, Mr. Kim?

1          MR. KIM:  It varies, Your Honor, but it will come

2    anywhere from, you know, $1,000 to more depending on the

3    scope and range and --

4          THE COURT:  I think all of this that we're

5    discussing is losing a sense of proportionality, frankly.

6    You're turning this into a very expensive case for your

7    client where, you know, the return may not be what he

8    expects.  I don't see the basis for Mr. No's cell phone

9    either.

10         MR. KIM:  So Your Honor, the problem is Defendants

11   don't produce anything, and they just say, I don't -- we

12   don't have it, and we're stuck with it.  And so you know,

13   there's the saying to trust but verify.  Frankly, Judge, we

14   don't trust them, and we need to verify.  That's the problem,

15   Judge.  So Picnic World did not produce a single document and

16   they said they don't have any, and I find it hard to believe,

17   Judge.  So in that case --

18         THE COURT:  Mr. No is not from Picnic World, right?

19   He's from New York Meat.

20         MR. SUE:  That's correct, Your Honor, and to be --

21         THE COURT:  Correct, Judge.  But he is effectively

22   running the defense for both corporations, to be frank,

23   Judge.

24         MR. SUE:  Well, that's a nice theory, Your Honor,

25   but I mean, that's not the facts.

1          THE COURT:  Mr. Sue, have you asked Mr. No if he

2   has KakaoTalk on his phone and whether he engaged in --

3          MR. SUE:  I don't --

4          THE COURT:  -- conversations with Mr. Kim on it?

5          MR. SUE:  He did mention that he often communicated

6   with the manager via text messages.  And at one point, they

7   did have some type of group KakaoTalk possibly, but then he

8   realized that Plaintiff was using it to -- after he left, he

9   was using it to, I guess, get information regarding pricing

10  because he started working for a competitor, so he knocked

11  them out of there.  But it is for a very short period of

12  time.

13         THE COURT:  And does he say that he doesn't have

14  text messages on the phone with -- not KakaoTalk, text

15  messages, with the Plaintiff?

16         MR. SUE:  I don't know that I produced them.  Let

17  me see.  I'm going through my discovery responses.  I'll have

18  to get back to you about that, Your Honor.  I don't want to

19  give you the wrong information.  But I'm sure at one point I

20  did have a conversation with him, but I just don't -- I just

21  don't see the notes about it right now.

22         THE COURT:  And Mr. Kim, you have done

23  forensic -- or had a forensic exam done on a cell phone

24  before?

25         MR. KIM:  Yes, Your Honor, in the past.

1        THE COURT:  How long is the cell phone taken from

2   the person?

3        MR. KIM:  Oh, so they would just get the phone

4   first and then download the data and then return the phone,

5   so it's not like, you know, the person is without their phone

6   for an extensive period of time.  Analyzing the data, that

7   ranges but not -- you know, just downloading the data from

8   the phone doesn't take a long time, Judge.

9        THE COURT:  All to find out if Mr. No has had any

10  text messages or KakaoTalk messages deleted from his phone?

11       MR. KIM:  Your Honor, so the problem is if they

12  were, like, you know, regular other corporate defendants,

13  they would voluntarily produce because you know -- but these

14  Defendants, Judge I have a hard time getting any information.

15  They just deny.  They say, you know -- and they don't produce

16  anything.  So under the circumstances, I -- this is not my

17  preferred because it's, you know, but you know --

18       MR. HUR:  Come on, Mr. Kim.  Stop it.  I mean, you

19  got to stop -- you know, you're saying a lot of these things

20  without any support.  I mean, just stick with the facts and

21  what they are not what you believe.  You know, you keep

22  implying that we're not cooperating with producing.  We are.

23       MR. LASH:  You asked for the daughter as a witness.

24  I said, I didn't think she'd know anything.  You insisted

25  that you'd depose her anyway, so I said, fine, let you depose

1    her.  You asked for --

2             MR. HUR:  Your Honor --

3             MR. LASH:  -- you've asked for documents, pay

4    stubs, et cetera, we told you we don't have any because he

5    wasn't on the books as an employee.  It's not that we're

6    withholding anything.  And so the way you're characterizing

7    this is very misleading.

8             MR. HUR:  Your Honor, we don't have 10 employees.

9    Picnic World has 26 employees.  I mean, there are a lot of

10   things that -- we don't want to argue and bicker in front of

11   you, Your Honor, but you know, I'm getting really tired of

12   Mr. Kim misleading this Court.

13            THE COURT:  Okay.  All right.  No cell phone for

14   Mr. No.  Next issue?

15            MR. KIM:  So how much time -- so since the -- how

16   much time the discovery will take, Judge?  So since I was

17   hoping to get the employee depositions all in one day by, you

18   know, being there, but apparently, they don't want me onsite.

19   So are they producing employees one by one on different

20   dates?  I have no idea what they have in mind.

21            THE COURT:  Well, you're going to need to work that

22   out.  I'm going to give you 30 days.  If that's not enough,

23   then you can write me and ask me for more.  And I have to say

24   that this -- you folks should've settled this case a long

25   time ago.  A company that has no records, it's just very hard

1  for them to say that someone is a manager when you have no

2  records.

3          MR. SUE:  We do have records, Your Honor.  I don't

4  know if you're referring to New York Meat or Picnic World,

5  but he's been a manager for over 20 years.

6          MR. LASH:  And there are documents saying that he's

7  a manager that have been produced and were -- he, you know,

8  was asked about it, you know.

9          MR. SUE:  He had a business card that indicated

10  that he was a manager.  He represented to third-party that he

11  was the manager.

12          MR. KIM:  Yes.  But that's not the law, Judge.  He

13  needs to be spending, you know, the majority of his time

14  being, you know -- doing the job as a manager.  But Plaintiff

15  was delivering meat, you know.  He had a truck and he had a

16  route, all these -- he had customers who were -- he was

17  delivering to, so.  And employers tend to just claim, oh,

18  you're -- you know, this person's a supervisor, that person's

19  a manager just to be -- you know, to -- and that -- they

20  think that, you know, by just naming somebody a manager they

21  think they can evade, you know, overtime, but that -- it

22  doesn't work that way.  So the fact that, you know,

23  they -- you know, so.  They had documents showing that he's a

24  manager doesn't, you know -- it is not a conclusive --

25          THE COURT:  Well, it's going to be an interesting

1    trial.  I think you guys should just get ready for that.

2            MR. SUE:  Well, it is interesting because all

3    the --

4            MR. LASH:  Your Honor, this is Robert Lash.  Could

5    I raise one last issue that wasn't raised in the letters

6    because it just arose at the end of last week?  Mr. Kim

7    produced to us at the very end of last week, around probably

8    another 800 pages of cell phone records from his client,

9    credit card bills from his client listing thousands of phone

10   numbers, hundreds or thousands of charges -- probably tens of

11   thousands of phone numbers.  I have no idea what this is.  I

12   have no idea what he's claiming pertains to this case or what

13   doesn't.  Clearly, a lot of it doesn't.  You can tell.  But I

14   have no idea what he's claiming does or doesn't.

15           And since he waited -- this was in response to

16   discovery requests that we served months and months ago, and

17   he waited until after the depositions were over.  And this

18   wasn't something that requested at depositions.  This was

19   requested months before the depositions.  He waited until

20   after they were over until the close of discovery -- the day

21   discovery closed to produce this and dumped on me, hundreds

22   of pages, almost 1,000 pages.  I need to go through this, but

23   I'd like the right to reopen Plaintiff's deposition, if need

24   be, to ask what these things that he just produced are

25   because I didn't have an opportunity at his deposition to

1  produce them because even though he had all this stuff before

2  his deposition, he chose to wait until afterwards to produce

3  it.

4          MR. KIM:  Your Honor, Mr. Lash already had emailed

5  me to -- the same question and I already responded to them

6  that I will get him why, you know, we produced them and for

7  what numbers is for -- you know, and for whose number belongs

8  to what so that he knows why we're producing.  So this has

9  already been discussed.  And you know, he emailed me.  I

10  replied back saying I'm going to produce, you know, those

11  information, so --

12          THE COURT:  And if Mr. Lash wants to --

13          MR. LASH:  I'm waiting for Mr. Kim to respond to

14  that email to let me know, but I'm -- I don't necessarily

15  just -- can rely on -- I mean, as Mr. Kim said, you know,

16  trust but verify, you know.  They produce information but

17  don't want me to ask his client about it until the day of

18  trial.

19          MR. KIM:  Those are the numbers of the employees,

20  so --

21          THE COURT:  Stop.

22          MR. KIM:  -- verify easily.

23          THE COURT:  Stop.  Stop.  Mr. Lash, if you want to

24  take Mr. Kim's -- the Plaintiff Kim -- deposition on those

25  documents after you get some clarification from Mr. Kim, the

1    lawyer, as to what they are.  You can ask Mr. Kim, the

2    lawyer, and if they won't produce Plaintiff Kim for

3    re-deposition, you can write to me and ask for them -- for me

4    to compel them to do that.

5              MR. LASH:  Thank you, Your Honor.

6              MR. KIM:  But only regarding those documents, Your

7    Honor, correct?

8              THE COURT:  Look, I'm not making any prophylactic

9    rulings.  If there's something I don't know that Mr. Lash was

10   full in what he just got -- everything if he's.  If there's

11   some other reason to re-depose Mr. Kim, he can ask for it.

12   But it's got to be a good reason, and it's got to be

13   something that was left undone in the prior deposition or

14   unanswered, not new material.

15             MR. LASH:  Thank you, Your Honor.

16             THE COURT:  I will extend discovery an additional

17   30 days, which puts us to -- we'll do it from now to August

18   19th.  And I would like a -- you know what?  No.  We're going

19   to have a telephone conference the 22nd.  I'm on vacation.

20   No.  All right.  So August the 30th at 2 p.m.

21             MR. LASH:  Your Honor, this is Robert Lash.  I'm on

22   trial in Nassau County Supreme on August 29th and 30th.

23             THE COURT:  Oh, okay.  Then, it's going to be

24   September 6th at 10 a.m.

25             MR. KIM:  Yes, Your Honor.

```
1              MR. LASH:  Thank you, Your Honor.

2              THE COURT:  Okay.  Is that it?

3              MR. KIM:  That's it, Your Honor.

4              THE COURT:  Thank you.

5              MR. KIM:  Thank you, Your Honor.

6              MR. LASH:  Thank you, Your Honor.

7              MR. SUE:  Thanks, Your Honor.

8         (Proceedings adjourned)

9

10                  TRANSCRIBER'S CERTIFICATE

11         I certify that the foregoing is a correct

12    transcript from the electronic sound recording of the

13    proceedings in the above-entitled matter.

14

15    Natalie C. Webb              August 5, 2022

16

17    _____       _____

18    Natalie C. Webb                      DATE

19    Legal Transcriber

20

21

22

23

24

25
```

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com