1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    JUNG KEUN KIM,
                                    Case No. 1:21-cv-01422-ENV-
4              Plaintiff,           RER

5    v.                             Brooklyn, New York
                                    August 31, 2022
6    NEW YORK MEAT, INC., et al,

7              Defendants.

8

9         TRANSCRIPT OF TELEPHONIC CONFERENCE HEARING
          BEFORE THE HONORABLE RAMON E. REYES, JR.
               UNITED STATES MAGISTRATE JUDGE
10

     APPEARANCES:
11   For the Plaintiff:            Ryan J. Kim, Esq.
                                   Ryan Kim Law, P.C.
12                                 222 Bruce Reynolds Blvd.
                                   Suite 490
13                                 Fort Lee, NJ 07024

14   For the Defendants:           Jonathan Y. Sue, Esq.
     (New York Meat, Inc. and      Law Offices of Jonathan Y. Sue,
15   Jong Hwa No)                   PLLC
                                   303 Fifth Avenue, Suite 1207
16                                 New York, NY 10016

17   For the Defendant:            Robert L. Lash, Esq.
     (Picnic World, Corp.)         Scott K. Hur, Esq.
18                                 Hur, Lash & Choe, LLP
                                   600 Sylvan Avenue
19                                 Ste 109
                                   Englewood Cliffs, NJ 07632
20

     Clerk:                        Miriam Vertus
21

     Court Recorder:               Electronic Sound Recording
22

23

24

25

1    Transcription Service:          Chris Hwang
                                     Abba Reporting
2                                    PO Box 223282
                                     Chantilly, Virginia   20153
3                                    (518) 302-6772

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

25

1       (Call to order)

2              THE COURT:  Good morning, this is United States Judge

3   Reyes.  We are holding a telephone conference in the case of

4   Kim v. New York Meat, Incorporated, et al, docket number 21-CV-

5   1422.

6              Counsel for the Plaintiff, please state your name for

7   the record?

8              MR. KIM:  Good morning, Your Honor, Ryan Kim on

9   behalf of the Plaintiff.

10             THE COURT:  Counsel for New York Meat?

11             MR. SUE:  Jonathan Sue for New York Meat and Jong

12  Hwang No.  Good morning, Your Honor.

13             THE COURT:  Counsel for Picnic World?

14             MR. LASH:  Good morning, Your Honor, this is Robert

15  Lash and I believe Scott Hur's also on the line.

16             MR. HUR:  Good morning, Your Honor.  Scott Hur here.

17             THE COURT:  Okay, I -- there are two issues that we

18  need to discuss.  First being New York Meat's request for a

19  signed authorization for the Plaintiff workers unemployment

20  records including --

21             MR. KIM:  Yes, Your Honor.

22             THE COURT:  -- (indiscernible) and all of that.  I

23  thought I was very clear in the last conference, that if the

24  Plaintiff did not have any of those records to produce, that he

25  was to produce a signed authorization.  So the -- New York Meat

1    could go get those documents directly from Department of Labor.

2              So am I wrong about that, Mr. Kim?

3              MR. KIM:  No, Your Honor, you're right.  And then, we

4    did produce the -- we did send the authorization, but

5    apparently Mr. Sue didn't catch it before he filed the letter.

6              And we actually produced the -- so we couldn't -- so

7    we -- the Plaintiff looked for his documents.  He couldn't find

8    it.  So we drafted a letter, he signed it, and we sent it over

9    to Mr. Sue, but we sent it around like 5:30.

10             I guess Mr. Sue apparently left that day on Friday

11   around 5:00 and he didn't see the letter until after he filed

12   the -- his letter with the Court.

13             And then, he also sent us a, you know, different

14   authorization form that he wanted.  So we filled that out and

15   signed -- had the Plaintiff signed it and said -- provided that

16   letter as well.

17             He -- but Plaintiff was out of town travelling, so

18   he -- so and then that form required a notarization.  And I

19   asked him to -- if he could find a notary.  And then, he

20   couldn't find it.

21             So I, you know, so I relayed to Mr. Sue that once

22   this -- the Plaintiff comes back, we could have that document

23   notarized as well.

24             So as far as we're concerned, that issue actually is

25   moot.  And I'm not sure why Mr. Sue didn't get see that letter

1  before he filed it, but I guess we'll (indiscernible)

2         THE COURT:  When is he coming back?

3         MR. KIM:  I -- as of yesterday, Judge, I spoke -- he

4  was on -- he was travelling.  I didn't get to ask him when he

5  was coming back, but I do not know, Judge.

6         THE COURT:  Mr. Sue, the --

7         MR. SUE:  Your Honor?

8         THE COURT:  Yes, go ahead, Mr. Sue.

9         MR. SUE:  Yeah, yes, Your Honor.  I don't belabor the

10  point because I know you're very -- you're probably very

11  frustrated with this also.

12         But apparently Friday afternoon, Friday evening after

13  I left the office, around 5:34, Plaintiff's counsel did send a

14  what he calls the authorization.

15         But it's basically a letter that says to whom it may

16  concern, I hereby give my authorization without any other

17  details except his name, okay?

18         So on Monday after he brought it to my attention, I

19  went to the website and I pulled out a authorization form for

20  the New York state unemployment.

21         And it took me all about 30 seconds.  And it has

22  information such as name, Social Security number, dates of the

23  unemployment benefit request.  And it required a notary.  So I

24  sent that, along with the instructions I pulled off from the

25  Internet also.

1            And this only took about I'd say a minute or two.

2    And I sent the packet to him on Monday evening or afternoon.  I

3    said this is what I need, okay?

4            So late last night, he sent me the authorization

5    form, not notarized.  I said what am I supposed to do with

6    this?  Obviously, it's going to be worthless.  So I don't know

7    when I'm going to get this authorization.  I don't know how

8    long is it going to take to get the records.

9            I don't know when the judge is going to decide the

10   motion on the collective certs.  I don't know when the JPQO is

11   going to be due.

12           So I'm in limbo here, Your Honor.  And it's just

13   incredible how -- why he would wait till the last minute to say

14   he doesn't have something.

15           I mean, if you're looking for something, you find it,

16   and it takes time, that's one thing, but if you obviously don't

17   have it, why wait till the last minute to say you don't have

18   it?  I don't understand that, Your Honor.

19           MR. KIM:  Judge, I did provide the letter.  We

20   couldn't find the form.  Well, maybe Mr. Sue has a better feel

21   than I am, but you know, I asked him his -- okay, so Judge,

22   frankly, Defendants here, whenever we -- I sent the document

23   request, they're the one who said, oh, we don't have any of

24   those documents and --

25           THE COURT:  I --

1      MR. KIM:  -- find it extremely frustrating.

2      THE COURT:  -- I really don't want to get into

3  history here and finger pointing and, you know, all that

4  nonsense.

5      You need to find out when your client is going to be

6  back, so he can get a signed, notarized appropriate

7  authorization to Mr. Sue.  They're entitled as I said

8  previously to those documents.

9      And you know, if it takes some time to get them, so

10  be it, but Mr. Sue is entitled to have that authorization.

11      So you need to get on the phone with your client,

12  find out when he's coming back.  And if he's not coming back

13  any time soon, he has to make arrangements to get that

14  authorization notarized.  You are a notary, right, Mr. Kim?

15      MR. KIM:  I am, Your Honor.  So I --

16      THE COURT:  Okay.

17      MR. KIM:  I am, Judge.  So --

18      THE COURT:  And you can't notarize it, you know, you

19  get the signed copy from your client via email.  You know his

20  email address.  You know who he is.  And you can -- I don't

21  understand why you can't notarize it.

22      MR. KIM:  I --

23      THE COURT:  New York State made some changes to the

24  notary process from what I understand during Covid.  And I

25  don't know that that doesn't apply any longer, so.

1    MR. SUE:  Your Honor, this is Jonathan Sue.  I'm not

2    100 percent sure, but I believe that provision is not in effect

3    any more.

4              THE COURT:  Oh, it isn't?

5              MR. LASH:  No, that's incorrect, actually.  They

6    passed a law detail recently in the last maybe two

7    months -- this is Robert Lash -- continuing it and providing

8    specific procedures for it.

9              THE COURT:  Oh.

10             MR. LASH:  Okay, so I could send you information on

11   that.

12             THE COURT:  So figure out, get it notarized, get it

13   to Mr. Sue.  I'll give you until -- what's the Friday after

14   Labor Day?  Is that the 9th?

15             And then, you know, Mr. Sue, no later than that.  I

16   would prefer it, you know, yesterday, but get it done.  And you

17   know, (indiscernible).

18             MR. SUE:  I'll get it done, Judge.

19             THE COURT:  What do you have pending with Judge

20   Vitaliano, anything?  You have no motions pending with him, no

21   pre-motion letters, correct?

22             MR. KIM:  We do have that motion to reconsider

23   regarding the closed (indiscernible) ruling, sir.

24             THE COURT:  Oh, all right.  Where is -- where is that

25   on the docket?  Oh, it's an appeal.  It's not a motion to

1    reconsider.  It's an appeal of my decision.

2            Look, Mr. Sue, you'll have time to get those records.

3    I don't think that -- even if that were -- my decision were

4    upheld, he'll have stuff to do, you know, with Judge Vitaliano

5    (indiscernible) through trial order, all of that.

6            So that's going to take some time.  So you should be

7    able to get these records before whatever the next phase is.

8    And that leaves Mr. Lash's recent request.

9            MR. LASH:  Yes, Your Honor, thank you.  This is

10   Robert Lash.

11           As Your Honor will recall at the -- in the last

12   conference, Your Honor, which I did not attend, but my

13   understanding is that -- I mean, the Plaintiff had produced

14   certain credit card receipts, indicating a number of

15   transactions that he claimed reflected work he did for

16   Defendant Picnic World, but without specifying which one.

17           So, my understanding is Your Honor said at the last

18   conference, said by, you know, I think August 26th, Plaintiff's

19   counsel -- Plaintiffs specified which one.

20           On August 26th, Mr. Kim emailed us a letter just

21   listing types of purchases he claims he bought at different

22   stores on behalf of Plaintiff.

23           But we don't know which of the transactions, which

24   dates and what was purchased specifically at any of those

25   (indiscernible).

1      So, for example, there were multiple, you know,

2   records for B.J.'s Wholesale.  I don't -- he says in his August

3   25th letter, he bought cleaning supplies here.

4      Okay, was -- did he buy anything for himself?  Were

5   all the transactions at B.J.s just for Picnic World and none

6   for himself?  Or were most of them for himself?  We don't know.

7   We don't know what he's claiming he bought or when.

8      And especially, you know, we would like copies of the

9   receipts to show exactly what was bought because he waited to

10   produce all these records until after his deposition, so that

11   we couldn't just ask him at his deposition any of these

12   questions.

13      So, you know, the Court had ordered him to, you know,

14   identify which transactions he did for the Defendants.  He

15   hasn't done that.

16      We're asking him -- we're asking the Court to let us

17   preclude him from introducing evidence at trial of that or to

18   get us, you know, the information that we're asking for.

19      You know, which transactions?  What was purchased?

20   Give us the receipts for that.  Who asked you to do those

21   specific purchases?

22      I mean, he had previously sent us a list of just, you

23   know, 20 people who he said over the years asked him to do

24   various things, but we don't know the specific transactions

25   that he's claiming.  We don't know which they are or who asked

1    for those specific transactions or what they involve.  We're

2    entitled to that information, I believe.

3              THE COURT:  It's -- Mr. Kim, do you want to be heard

4    on this?

5              MR. KIM:  Yes, Your Honor.  So, Your Honor, so

6    Plaintiff listed the name, phone numbers of the employees of

7    the Picnic World who asked, you know, who asked, you know, what

8    to buy.

9              So we produced those lists of all the names and then

10   the phone numbers and what, you know, what specifically they

11   were -- they asked this Plaintiff to go buy.

12             So we have already produced them.  And as Your Honor

13   may remember, Plaintiff worked for both Defendants for decades

14   and decades.

15             We last worked in 2020.  So it's been old -- so any

16   you know, and then, so obviously, whatever the receipt they're

17   saying that, oh, we need this specific receipt.  They're

18   they -- Plaintiffs do not have them.

19             If we had it, obviously, that would

20   support -- bolster Plaintiff's case.  So there was no reason

21   for us not to produce them, but unfortunately, obviously,

22   nobody keeps the credit card receipt, you know, from like years

23   and years ago.

24             So, instead, I asked him, hey, maybe you had those

25   credit card statements, go look for it.  And that's

1    what -- that's when we got the credit card statements.

2              We contact the credit card and got those statements.

3    And we produced the statement.  And then now, they're saying,

4    oh, and they said we don't know which one.

5              So then, we produced the letter saying, okay, so Mr.

6    Plaintiff went to this store and bought these things.  And

7    then, now they're not satisfied because you know what?  All

8    the -- who asked him, where's the receipt?

9              So the Defendants' 30(b)(6) witness said that she

10   said that the company never asked the Plaintiff to buy

11   anything.  So that was their official statement.

12             So the Defendants' position is that no -- none of the

13   employees, the corporation, never asked him to do -- buy

14   anything, didn't ask him to deliver anything.  That's their

15   position.

16             And then, Plaintiff's saying, look, I have all these

17   phone records, all this you know, call -- you know, call back

18   and forth with all these employees showing that I have so many

19   phone calls.

20             Then now I have this credit card statement showing

21   that, you know, I bought these things.  I told you which store

22   I went.  I bought these things for whom.

23             And now, they're saying where's the receipt?  When

24   did (indiscernible) you know, ask you to buy.  We don't have

25   those information, Judge.

1      THE COURT:  Do the credit card statements indicate

2  each of the -- for each of the transactions the name of the

3  vendor like, you know, B.J.'s Wholesale or?

4      MR. KIM:  Yes, Your Honor, it does, but if -- to the

5  extent that -- so it shows the date.  It shows the store, you

6  know, B.J.s or you know, Detro (phonetic) Cash and Carry, and

7  then the amount.

8      Obviously, it's not going to show -- and if Plaintiff

9  has to buy multiple items, it doesn't list every single item.

10  That was only from, you know, only the receipt I believe would

11  have that information.

12      But again, years and years ago, we don't have those

13  receipts.  I mean, so that's why we relying on the credit card

14  statement.

15      THE COURT:  What --

16      MR. HUR:  But Your Honor, he -- is Plaintiff claiming

17  that every single --

18      THE COURT:  Hold on, hold on, hold on.  What

19  period -- what is the period of time that the credit card

20  statements covers?

21      MR. KIM:  So I believe the ones that we produced to

22  the Defendant is one from 2016.

23      MR. HUR:  Your Honor, I have the document here.  It's

24  Scott Hur for Picnic World.  He produced from June of 2017 to

25  November -- end of November of 2019.

1          THE COURT:  That's all you have?

2          MR. KIM:  Yes, Your Honor, that's all we have could

3    get.

4          MR. HUR:  Your Honor, this Scott Hur again.  Let

5    me -- I would like to Your Honor to understand what -- so Mr.

6    Kim, lying Kim, he -- in this letter, he says B.J. Wholesale,

7    he bought cleaning supplies here, all right, that's the

8    response to our request.  But then the amount of money, it's

9    $2,364.62 for B.J. Wholesales.

10          I mean, the reason that -- the statements should only

11   identify the date, the transaction date, the -- and the total

12   amount.  It doesn't show what was purchased.

13          So for Mr. Kim to say he (indiscernible), which

14   presumably, I mean, I added the numbers, $2,364, I mean,

15   that -- it just --

16          MR. LASH:  Well, it's -- and it's multiple

17   transactions.  We don't know where each of those transactions

18   would be claiming that was for Picnic World.  He doesn't say

19   were they also for his own -- were any of them for his own

20   personal items.  He doesn't say.

21          THE COURT:  Well, wait a second.  When you say

22   multiple transactions, what do you mean?

23          MR. LASH:  What I mean is that there are multiple

24   state -- statements from multiple months.  So say in June, he

25   went to B.J.s.  And then, in August, he went to B.J.s.

1          And then in, you know, a year later, he went to

2    B.J.s.  So there are multiple times that he went to B.J.s for

3    example.

4          Now did he go to B.J.s all those times just for

5    Picnic World?  Did he go to any of those just for himself?

6          Were some of them mixed?  We don't know.  We

7    don't -- and we don't know what he purchased in any particular

8    transaction that he's claiming was for this.

9          And this is, you know, what the problem that we're

10   having here is, you know, we don't believe he actually did

11   this.

12         So he's given us a credit card statement that said I

13   went to B.J.s.  And then, he sent -- his attorney sends a

14   letter saying I went to B.J.s, you know, several times.

15         And then, his attorney sends a letter saying he

16   bought cleaning supplies at B.J.s.  You know, and you add up

17   all those transactions, it's over $2,000 because B.J.s alone in

18   multiple -- multiple times.

19         THE COURT:  So wait a second.  So you're saying that

20   B.J.s, there are multiple transactions that add up to over

21   $2,000?

22         MR. LASH:  Yes.

23         THE COURT:  Or each of them is --

24         MR. LASH:  Yes.

25         THE COURT:  -- $2,000?

1          MR. LASH:  No, multiple that add up to that, but we

2     don't know if were any of those transactions just for the

3     Plaintiff's personal purchases?

4          THE COURT:  And --

5          MR. LASH:  We don't know because he doesn't want to

6     tell us.

7          THE COURT:  Mr. Kim, you say that your client does

8     not have the receipts, the actual receipts from any of these

9     trips to the various vendors?

10         MR. KIM:  So, Your Honor, actually, what my client

11    said is that he -- so he would get -- so he paid -- bring those

12    items that he bought to the store through the Picnic World.

13    And then, he would get reimbursed.

14         So it's a possibility that the Defendant themselves

15    because obviously they want, you know, they don't want to

16    overpay.

17         They only want to pay for items that, you know,

18    Plaintiff got for Defendant.  So presumably, they have it,

19    because you know, there's -- they're the ones who's paying for

20    it.

21         THE COURT:  Okay, so a simple question.  He doesn't

22    have the receipts any longer, correct?

23         MR. KIM:  He does not, Your Honor.  Correct, Judge.

24         THE COURT:  All right, so here's what you're going to

25    do.  When he gets back in, if the -- if Picnic World wants to

1    take his deposition on this issue, they can.

2            If he doesn't have receipts, you can't produce

3    receipts.  He's indicated in a letter from counsel that the

4    transactions on the credit card report for the various stores

5    that are listed are work done on behalf of Picnic World.

6            If you want to probe that, whether he -- you know,

7    this trip on June 1st was for Picnic World or not, or if

8    his -- was it -- did he buy stuff for himself at that trip, you

9    can inquire, but if not --

10           MR. LASH:  Okay.

11           THE COURT:  -- without the receipts, which he claims

12   he doesn't have, I don't know that I can help you out.  And I'm

13   not going to preclude him from making this argument.

14           MR. LASH:  Okay, all right.  Understood, Your Honor.

15           THE COURT:  So you have to make that decision if you

16   want to take the deposition.  And if you do, you'll let Mr. Kim

17   know.  And that deposition will be held within one week of him

18   returning to New York.

19           MR. LASH:  Okay, Mr. Kim will let us know when he's

20   returning to New York?

21           THE COURT:  Yes, you're going to let him -- Mr. Kim,

22   you're going to let them know by the end of this week or you

23   need to get in contact with your client.

24           I mean, you're going to be contacting him anyway to

25   notarize the authorization.  So you might as well find out when

1    he's coming back to New York and --

2              MR. KIM:  Yes, Your Honor.

3              THE COURT:  -- you know, he may have to sit for

4    another deposition, which I would assume would be a very short

5    deposition.

6              MR. KIM:  Yes, Your Honor.

7              THE COURT:  All right.

8              MR. LASH:  All right, thank you, Your Honor.

9              MR. KIM:  Your Honor, I have one last issue that I

10   wanted to bring to the Court's attention.

11             THE COURT:  Did you discuss it -- did you meet and

12   confer with Mr. Sue, and Mr. Lash, and Mr. Hur about it?

13             MR. KIM:  So I -- well, so --

14             THE COURT:  That you're hemming and hawing, that

15   you're hemming and hawing means that you didn't.

16             MR. KIM:  No, because I'm not sure if they

17   could -- if they would agree or not.  From my perspective, we

18   did.  It's about the witnesses, the nonemployee witness

19   deposition that the Court granted the Plaintiff to take.

20             And out of the four nonemployees, three of the

21   nonemployee who confirmed to have to be deposed and subpoenaed,

22   mysteriously, they did not show up.

23             They didn't appear on the -- and even like a Friday

24   evening when -- as we confirmed that they were going to be

25   appearing, and then, they were acquiring, you know, asking

1    about the time and place.

2            And then, Monday, they just didn't show up.  And

3    three of them, so three of them did not appear.

4            And then, we -- you know, and then, Plaintiff called

5    to follow up why they didn't show up.  And then, they

6    just -- they don't even answer the phones any more.

7            So I have a -- I -- you know, I'm highly concerned

8    that Defendant Mr. No might be playing some witness

9    intimidation or witness tampering.

10           So I'd like to pursue, you know, to find out

11   what -- you know, why they didn't show up.

12           MR. HUR:  Your Honor, this is Scott Hur --

13           MR. SUE:  Your Honor, this is Jonathan Sue here.

14           MR. HUR:  Oh, I'm sorry, Jonathan.

15           MR. SUE:  Okay, just a quick refresher, Your Honor.

16   The Plaintiff (indiscernible) these witnesses were never served

17   with subpoenas in the first place.

18           And from the information I got, they were threatened

19   by Plaintiff's counsel about various things to show up for the

20   deposition.

21           One of them showed up, two of them didn't for

22   whatever reason.  All the counsels were present.  They didn't

23   show up.

24           We concluded the deposition.  And Your Honor reminded

25   Plaintiff's counsel that you're going to compel anything who's

1    not served with a subpoena in the first place.

2            So we're way past the deadline here.  And he's trying

3    to re-hash something that's already been resolved.

4            MR. KIM:  Your Honor, (indiscernible).

5            MR. HUR:  Your Honor, I join in the -- Your Honor --

6            MR. KIM:  (Indiscernible) witness tampering.

7            THE COURT:  Mr. Kim, Mr. Kim, wait.

8            MR. HUR:  Your Honor, this is Scott Hur.  You know, I

9    really sort of -- Mr. Kim's mischaracterization of the facts.

10   There are three witnesses.  One showed up, two didn't.

11           He did not serve subpoenas.  Your Honor in the last

12   hearing specifically told Mr. Kim, you know, you're not going

13   to be able to compel.  This is it, this is the end.  This is

14   the end date, no more.

15           And Your Honor -- and we want -- we Picnic World move

16   for protective order, but Your Honor specifically said for

17   sloppiness, Plaintiff's counsel sloppiness, right, but no

18   prejudice.

19           Again, he did not meet and confer.  He does not

20   answer Your Honor's questions.  He's always going around being

21   very sloppy, continuously being sloppy.

22           You know, not really following Your Honor's

23   directives and orders.  And he's trying to re-hash never ending

24   discovery yet again.  This is nuts, Your Honor.

25           MR. KIM:  So, Judge, I'm not asking to compel.  I'm

1   asking -- I'm trying to find out if the Defendant's actually

2   tampering.  That's what I'm asking, Judge.

3          THE COURT:  But what do you -- how do you propose to

4   do that?  What are you asking me for, Mr. Kim?

5          MR. KIM:  So I want the Defendants under oath to say,

6   hey, did you call them?  Did you call these witness?  When did

7   you call them?  What did you tell -- what did you

8   (indiscernible)?

9          THE COURT:  You want --

10         MR. KIM:  Why did you call them --

11         THE COURT:  -- to take another deposition?

12         MR. KIM:  Just to find out if the Defendants tampered

13  or, you know, or you know, tampered with the scheduled

14  depositions.

15         So I -- so, Judge, it's not about to compel them to

16  (indiscernible), because I don't believe there's, you know, now

17  that's for, Your Honor, because I have a very good feeling that

18  Defendant reached out because otherwise, how could the -- you

19  know, all of them when they confirmed?

20         I have the text message showing that, you know, I'll

21  be there by 8:30.  And then, they -- and then mysteriously,

22  they don't show up.  They're not even answering the Plaintiff's

23  calls.

24         I have never spoken with any of the witnesses, Judge.

25  So --

1          MR. HUR:  Your Honor, Your Honor, this is just pure

2     speculation on Mr. Kim's part.  Again, another one of

3     victim -- you know, we're victim here.  You know, this is my

4     belief.  You know, this is my feelings.

5          I mean, if Your Honor so wishes, we could get a

6     declaration from the, you know, from the Defendant, but that

7     being said, Your Honor specifically has stated no more

8     deposition.  No more -- no extension.

9          MR. KIM:  And (indiscernible)

10         MR. SUE:  Yeah, (indiscernible) Plaintiff.

11         MR. HUR:  When Mr. Kim says to the Court that he

12    never spoke to any of the witnesses, what he's omitting to tell

13    the Court is that his client did.

14         Even the night before, his client was calling and his

15    office was calling the witnesses, trying to pressure them, even

16    though they didn't -- and we're not sure exactly what the

17    Plaintiffs told these witnesses, but no subpoenas were served.

18         MR. KIM:  Judge, if it's just relying on declaration,

19    Defendant's going to lie.  That I know he's already lied.  I

20    have --

21         MR. HUR:  Your client's lying, Mr. Kim.  What about

22    the Plaintiff lying about this?  Your client never worked for

23    Picnic World.  You're raising all these issues, raising -- I

24    mean, stop it, please.

25         THE COURT:  So you want me to order the Defendant to

1    appear for a deposition, so you can inquire as to whether he

2    tampered with these nonparty witnesses, who were never

3    subpoenaed to appear for a deposition?

4              MR. KIM:  Judge, they were by agreement.  They agreed

5    to appear, Judge.  We have -- so I mean, I have evidence that

6    they're -- they, you know, they agreed.  So the witness, they

7    can waive and then appear voluntarily, Judge.  So --

8              MR. SUE:  Your Honor, we don't know why the witness

9    did not appear.

10             MR. KIM:  -- phone records.

11             MR. SUE:  But --

12             MR. KIM:  If he calls the Defendant -- those

13   witnesses, it will have them.  You know, so if we look at

14   the -- his phone.  I mean, on message (indiscernible) now he

15   might say oh, I lost my phone.  You know, so that might happen.

16             You know, but this is a very serious job, Judge.  The

17   parties cannot tamper with the witnesses.

18             MR. SUE:  (Indiscernible.)

19             MR. HUR:  Again, Your Honor, this is Scott Hur again.

20   If in fact any of the Defendants have tampered, so-called

21   tampered witnesses, wouldn't Mr. Kim or Ryan -- the Plaintiff's

22   counsel, who's been reaching out to those witnesses, who Mr.

23   Kim states that they agreed to show up.  Yeah, they didn't show

24   up for whatever the reason may be.

25             Now he's upset and he wants to speculate that because

1    they didn't show up, it must be the Defendants must have

2    tempered, what -- no.  It's just -- this is all just -- it's

3    crazy, Your Honor.

4                MR. KIM:  Judge, I mean, reasonably, if for whatever

5    reason the witness wasn't able to show up, and if the Plaintiff

6    called them, then they would say, oh, yeah, you know what?

7    Something came up.  I'm so sorry.  I -- you said that would be

8    a reasonable thing, Judge, right?

9                And what they're not even answering the call now.

10   And when Friday evening, they confirmed, and Monday, they don't

11   show up.  And three of them, you know, they all don't show up,

12   that tells me something's going on, Judge.  And --

13               MR. LASH:  So (indiscernible) wanted three witnesses

14   to (indiscernible) --

15               THE COURT:  Stop, stop, stop.

16               MR. LASH:  -- deposed anymore.  So now you're adding

17   an additional witness and ignoring the fact that it was your

18   client, who contacted them and harassed them and intimidated

19   them.

20               So are we getting to depose the Plaintiff on his

21   witness tampering?

22               MR. KIM:  Robert, do you have any proof that my

23   client intimidated --

24               MR. LASH:  I have as much as you (indiscernible).

25               THE COURT:  Okay, stop, stop, stop.  No one has proof

1    of anything.  It's all speculation.  If you want to make some

2    sort of application, Mr. Kim, go right ahead.  Good luck.  All

3    right, I just don't see it.

4           And if you do make that application, don't be -- and

5    don't be surprised that the Defendants make an application to

6    take your client's deposition on his contacts with these

7    nonparties.

8           MR. SUE:  Well, this is Jonathan Sue, Your Honor.

9    And obviously, Plaintiff's counsel's office decided to keep in

10   touch with these witnesses and, you know, all these types of

11   conversations they had with them.  So they could be subject to

12   any inquiries if anything.  I mean, why stop there?

13          MR. LASH:  Right.  That's correct, Your Honor.

14          MR. KIM:  I'm all for having evidentiary hearing,

15   have everybody come in and tell you definitely what they said.

16          THE COURT:  No, I'm not -- if you want to make that

17   application, go right ahead.  Good luck.  I said it already.

18          You know, this is getting ridiculous.  I have another

19   conference, gentlemen.  So I need to turn to it.

20          So unless there's anything else, we're adjourned.

21          MR. LASH:  Nothing further, Your Honor.

22          MR. SUE:  Nothing further, Your Honor.

23          THE COURT:  All right.

24      (Proceedings concluded)

25

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          September 21, 2022

Chris Hwang                  Date

Court Reporter